IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Thomas A.B. H.[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 23-cv-1150-RJD[2] |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM and ORDER**

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff protectively filed an application for supplemental security income in 2020, alleging disability beginning in November 2018. Tr. 93, 197. After failing to prove disability initially and on redetermination, he and his attorney appeared before an ALJ in July 2022. Tr. 48-85. The ALJ issued a decision a few months later finding Plaintiff retained the ability to perform a range of light work and: never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. Tr. 29. Relying on

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). (Doc. 17).

a vocational expert's testimony, the ALJ determined that Plaintiff could perform other work that exists in significant numbers in the national economy and, therefore, was not disabled. Tr. 40-41. The Appeals Council denied Plaintiff's request for review in February 2023, rendering the ALJ's decision the agency's final decision for purposes of judicial review. Tr. 1-6. This timely action followed.

### Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ improperly relied on stale non-examining opinion evidence and her own lay opinion over the disabling opinion from Plaintiff's pain management provider in assessing Plaintiff's physical RFC.

### Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statute.[3] Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.*, and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

plaintiff unable to perform any other work?   20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled.  A negative answer at any step, other than at step 3, precludes a finding of disability.  The plaintiff bears the burden of proof at steps 1–4.  Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

Importantly, the Court's scope of review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).  Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

**The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 21, 2020, the application date. Tr. 22. The ALJ found that Plaintiff had the medically determinable severe impairments of major depressive disorder, generalized anxiety disorder, somatic symptom disorder, PTSD, borderline intellectual functioning, obesity, cervical, thoracic, and lumbar degenerative disc disease, non-displaced fracture of the T4 spinous process, and left knee osteoarthritic spurring. Tr. 22. The ALJ found that Plaintiff had the non-severe impairments of hemorrhoids, diverticulitis, and post-concussion syndrome and that a primary headache disorder was not a medically determinable impairment. Tr. 23-24. At step three, the ALJ found Plaintiff did not meet or medically equal any listed impairment, requiring her to proceed to step four of the evaluation. Tr. 24-29. At step four, the ALJ assessed Plaintiff with the residual functional capacity to perform:

> [L]ight work as defined in 20 CFR 416.967(b); such that he cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; can perform an unskilled, simple, routine, and repetitive job; can have no interaction with the general public; can have occasional interaction with supervisors and co-workers; requires a job that is low stress in nature, defined as no fast paced or high production quotas; and can work in proximity to but not on joint or shared tasks.

Tr. 29-39.

Then, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 39. The ALJ found, however, jobs in the national economy that Plaintiff could perform. Tr. 40-41. Therefore, the ALJ concluded that Plaintiff was not disabled or entitled to benefits. Tr. 41.

**The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

   **1.   Agency Forms**

Plaintiff was born on May 22, 1984, and he was 36 years old, a younger individual, on the application date. Tr. 39, 92. Plaintiff protectively filed an application for supplemental security income in 2020, alleging disability that began on November 11, 2018. Tr. 93, 197. In his Disability Report, Plaintiff listed the following conditions limiting his ability to work: Neuropathy; PTSD; Back Pain; Depression; Slip Disc Degenerative Disease. Tr. 237. In his Function Report, Plaintiff explained that he is unable to work because his PTSD limits almost every aspect of his life. Tr. 292. He cannot hold any job because he cannot "keep his emotions together" and stop his dissociation. Tr. 292. His serious back conditions allow him to only lift around 2.5 pounds and limit the amount of time he can sit or stand at one time. Tr. 292. He further reported he is depressed and anxious due to his back injuries and resulting pain. He cannot rise from his bed or the couch most of the days. Tr. 292. He reported that he could only lift up to 2.5 pounds, and he could not squat, bend, reach, kneel, or climb stairs due to his back pain. Tr. 297. He further reported that he could not walk more than a quarter block and could not sit or stand for long periods of time due to his back pain. Tr. 297.

   **2.   Evidentiary Hearing**

Plaintiff appeared and testified by phone at a hearing held on July 13, 2022, before the ALJ, being represented by counsel. Tr. 20, 48. Plaintiff testified that he could only sit for ten to

5

fifteen minutes at a time and stand for up to fifteen minutes at a time. Tr. 54-55. He could walk ten minutes at a time, and walking more than ten minutes required a rest break. Tr. 55. Plaintiff had difficulty going upstairs and did so slowly. Tr. 55. Further, he suffered from hand and feet neuropathy and numbness. Tr. 56. He could not lift a gallon of milk without shoulder pain, and he dropped things from his hands four to five times per week. Tr. 55-56. He took medication for migraines, and the medication helped. Tr. 58. Performing chores such as laundry, washing dishes, and vacuuming was difficult. Tr. 59. He was generally capable of taking care of his personal needs, but he required help from his partner occasionally. Tr. 59. He was capable of driving to the store once per week. Tr. 74-75.

A vocational expert ("VE") testified that Plaintiff has past work as a horticultural worker II, DOT# 405.687-014, heavy as generally performed and light as actually performed, unskilled with an SVP of 2; a cook, short order, DOT# 313.374-014, light, unskilled with an SVP of 2; and a cook helper, DOT# 317.687-010, medium as generally performed and light as actually performed, unskilled with an SVP of 2. Tr. 39, 79.

### 3. Relevant Medical Records

In March 2016, prior to the alleged onset date, imaging of Plaintiff's thoracic spine showed no evidence of acute fracture or spondylolisthesis, mild degenerative disc disease, and mild S-shaped curvature of the thoracic spine. Tr. 31, 2040. Imaging of the lumbar spine demonstrated no evidence of acute fracture or spondylolisthesis, mild degenerative disc disease, and mild dextrocurvature at L2. Tr. 31, 2041. Imaging of the left ankle noted no evidence of acute fracture or dislocation, large osteophyte extending off the dorsal aspect of the talar neck, and mild anterior tibial osteophytosis. Tr. 31, 2042.

In November 2017, Plaintiff began presenting to St. Anthony's Physician Group with complaints of back pain. Tr. 31, 668. Examination on that occasion noted Plaintiff to be overweight and to have mild tenderness in the midline lumbar spine, but he was also noted to be in no distress, with normal neck range of motion, normal musculoskeletal range of motion, no edema, tenderness, or deformity, normal reflexes, and normal coordination. Tr. 31, 668-672. In April 2018, an X-ray of the thoracic spine noted no acute fracture or subluxation, and an X-ray of the cervical spine noted cervical spondylosis with associated grade 1 anterolisthesis of the C2 on C3. Tr. 31, 2044.

Following the alleged onset date, a May 2019 X-ray of the sacrum and coccyx noted no acute osseous abnormality. Tr. 31, 2046-2047. Plaintiff presented for follow-up and medication management with St. Anthony's Physician Group in September 2020. Tr. 31, 482-518. He was noted to be obese but in no acute distress and to have no extremity edema. *Id.* Later in September, Plaintiff presented with a complaint of abdominal pain and vomiting. *Id.* Examination noted diffuse lower abdominal tenderness, but he was noted to have no other areas of tenderness, no guarding, rebound, masses, or hepatosplenomegaly, normoactive bowel sounds, no CVA tenderness, full range of motion of all extremities, and no extremity, tenderness, swelling, or crepitus. *Id.* During emergency department visits in November 2020 for acute abdominal issues, examinations also noted Plaintiff to have normal musculoskeletal range of motion, full extremity range of motion with no tenderness, swelling, or crepitus, and no focal neurological deficits. *Id.*; Tr. 31, 482-518, 660-758.

In March 2021, Plaintiff presented following a fall, which resulted in a fifth metatarsal fracture that was confirmed by imaging. Tr. 31; 950-1112. At that time, Plaintiff was placed in

7

a CAM boot and reported continued pain and inability to bear weight on the foot. *Id.* In April 2021, Plaintiff presented for a physical consultative examination. Tr. 31-32, 653-659. He complained of neck and back pain and was noted to be using a walker that he had gotten from the doctor and wearing a right boot base as he had a recent fracture of the right fifth metatarsal. Tr. 32, 653-659. Examination on that occasion observed him to have a significant limp without the walker, an inability to tandem walk, and an inability to walk on the right leg, heels, toes, or fully squat due to his recent toe fracture, positive straight leg bilaterally at 30 degrees, and decreased range of motion in the cervical and lumbar spines in multiple planes. *Id.* However, it also otherwise noted him to be in no apparent distress, with no muscle atrophy, no spasms, the ability to oppose all thumbs and fingers, pinch, arm, leg, and grip strength of 4+/5, no difficulty with getting on and off the examination table, normal sensation, 2+ reflexes, no lower extremity edema, good distal pulses, and normal range of motion except as otherwise noted. *Id.* Plaintiff then subsequently presented for orthopedic follow-ups in April and June 2021 for his toe fracture, reporting that the pain was very minimal and that he had progressed to weight-bearing as tolerated. Tr. 31, 950-1112. Imaging in June noted the fracture was healing and in alignment, he reported minimal pain, and examination noted tenderness in the right foot but otherwise noted 5/5 strength and intact sensation. *Id.*

In September 2021, Plaintiff presented for an evaluation of upper back pain since August 2021 after being involved in a motor vehicle accident, stating that he was struck by a vehicle. *Id.* Examination on that occasion noted tenderness to palpation throughout the lumbar and thoracic spine, tenderness to palpation over the paraspinal throughout the thoracic and lumbar spine, 45 degrees of flexion, 20 degrees of extension, 15 degrees of lateral flexion bilaterally, and 10 degrees

8

of rotation bilaterally, however, it also noted that the lumbar spine had good and normal alignment, no gross deformity, no step off, intact lower dermatomes bilaterally, 5/5 lower myotome strength bilaterally, and 2+ reflexes bilaterally.  *Id.*  An X-ray of the thoracic spine demonstrated mild anterior wedging of the T12 vertebral body and degenerative changes.  *Id.*  A CT scan of the thoracic spine reviewed from the emergency department visit demonstrated linear lucency through the posteroinferior spinous process of T4 that was suspicious for an acute nondisplaced fracture in the setting of trauma.  *Id.*

Plaintiff presented for a follow-up later in September.  Tr. 32, 1113-1133.  Examination on that occasion observed Plaintiff to have cervical tenderness, cervical pain with movement, muscular tenderness, and decreased range of motion, decreased thoracic and lumbar range of motion, decreased right knee range of motion, and antalgic gait, but he was otherwise observed to be in no acute distress, with no musculoskeletal deformity or sign of injury, no cervical spinous process tenderness, no lower extremity edema, no right knee swelling, deformity, or effusion, and normal coordination.  *Id.*  Other imaging was also reviewed, including a CT scan of the cervical spine that noted large anterior osteophytes from the C3 to the C7 levels but no cervical fracture, imaging of the left hip that demonstrated no acute osseous abnormality, and imaging of the left knee that demonstrated mild left knee osteoarthritic spurring but no acute osseous abnormality. *Id.*  During a follow-up for diverticulosis and GERD in November 2021, examination observed him to have an obese body habitus, but he was otherwise noted to be in no acute distress, with full neck range of motion, full range of motion of all extremities, and no musculoskeletal tenderness, swelling, or crepitus.  *Id.*  Additionally, neurology consultations and follow-ups for reported headaches following the motor vehicle accident observed Plaintiff to be alert and oriented, with

9

intact cranial nerve, 5/5 motor throughout, 2+ deep tendon reflexes, and normal gait. Tr. 32, 683-1766. A CT scan of the brain noted no acute intracranial findings. *Id.* In February 2022 it was noted that Plaintiff reported that his headaches had decreased to two to three per week or five to ten times per month and were resolved when taking Nurtec. *Id.* In April, he reported that he felt the Nurtec was significantly decreasing the number and severity of his headaches. Tr. 33, 683-1766. The record also indicates that Plaintiff participated in some physical therapy sessions between October 2021 and January 2022 with complaints including back pain and headaches. Tr. 33, 1614-1674. By January 2022, he reported that he was doing pretty good, that his new headache medications were really helping, and it was noted that he was making progress with overall improvement. *Id.*

The record additionally indicates that Plaintiff had presented for visits with pain management for complaints of low back pain since May 2018 and continuing into 2022. Tr. 23, 1767-2050. Plaintiff's most recent physical examination in June 2022 observed him have an overweight body habitus, thoracic paraspinal muscle tenderness, cervical tenderness, tightness and trigger points in the cervical muscles, restricted motion of the cervical spine, lumbar tenderness to palpation, lumbar muscular tightness, decreased lumbar range of motion, mild and lower back tenderness, lumbar trigger points, and positive straight leg raise, but it also noted him to have no upper extremity atrophy or asymmetry, no sacroiliac joint tenderness, full range of motion of the lower extremities, no hip tenderness, motor examination within normal limits, and gait within normal limits. *Id.*

### 4. Medical Opinions

In August 2022, treating physician Dr. Ali opined that Plaintiff had work-preclusive

standing, sitting, and walking restrictions, among other limitations. Tr. 1677-81. He opined that Plaintiff could lift 20 pounds occasionally and less than 10 pounds frequently, sit for only 20 to 30 minutes at a time, stand for 15 to 20 minutes at a time, and sit, stand, and walk for less than 2 hours total in an 8-hour workday. Tr. 1678-79. Dr. Ali also opined that Plaintiff could occasionally stoop, crouch, and climb stairs, rarely twist, never climb ladders, and should avoid temperature extremes, dust, fumes, gases, or hazards. Tr. 1680-81. He further opined that Plaintiff needed a job that required him to shift positions at will, take unscheduled breaks, and elevate his legs. Tr. 1679.

### 5. State Agency Consultants' Opinions

Dr. Peterson reviewed the record in April 2021, without examining Plaintiff, and determined Plaintiff could perform light work with frequent stooping, kneeling, crouching, and crawling, and unlimited balancing and climbing ramps, stairs, ladders, ropes, and scaffolds. Tr. 102-04. Dr. Peterson also found Plaintiff capable of standing, walking, and sitting 6 hours out of an 8-hour workday. *Id.*

Dr. Vautrain reviewed the record in September 2021, without examining Plaintiff, and found slightly greater limitations than Dr. Peterson: Plaintiff could perform light work but stoop, crawl, and climb ramps and stairs occasionally; balance, crouch, and kneel unlimited, and never climb ladders, ropes, scaffolds; and sit and stand 6 hours out of an 8-hour day. Tr. 119-20.

### Analysis

Plaintiff makes a two-fold challenge to the ALJ's assessment of Plaintiff's RFC. First, Plaintiff argues that the ALJ erred in relying on Dr. Vautrain's "stale" medical opinion and her own lay interpretation of the subsequent medical record. Second, he argues that the ALJ

11

improperly assessed as unpersuasive Dr. Ali's disabling opinion.  The Court will address each challenge in turn.

### 1. The ALJ's assessment of Dr. Vautrain's medical opinion.

Plaintiff first argues that the opinion of the state agency medical consultant, Dr. Vautrain, is outdated and incomplete in that it has not considered Plaintiff's medical record that was added to the file after the opinion was rendered.  A reviewing physician's opinion is outdated when "later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion."  *See Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (*quoting Moreno v. Berryhill,* 882 F.3d 722, 728 (7th Cir. 2018)).

Here, Dr. Vautrain reviewed Plaintiff's file as it existed on September 19, 2021, and his opinion references reviewing medical evidence through March 2021.  Tr. 119-120.  Subsequently, additional evidence was added to Plaintiff's file.  The new evidence includes Plaintiff's August 2021 motor vehicle accident, which appears to have resulted in a T4 fracture.  Citing the additional record, Plaintiff argues that as a result of the accident, his pre-existing back pain increased, and he further experienced migraines, allegedly resulting from post-concussion syndrome, for which he was treated with a neurologist, PT, OT, and speech-language pathology.  Tr. 1094-1096, 1113, 1116, 1119, 1466, 1473-1474, 1554-1613, 1707, 1715-1716, 1728-1729, 1735-1736, 1742-1743, 1749-1750.  Plaintiff further cites an additional record containing treatment for Plaintiff's neck, back, and knee pain since 2018, with alleged worsening in 2021.  Tr. 1777-2022.  That record allegedly includes physical findings and reports of numerous lumbar facet injections and trigger point injections during the relevant period, in addition to medications for pain management.  *Id.*  It further references an NCS study suggestive of peripheral sensory

neuropathy and bilateral L5 radiculopathy.   Tr. 1985.

Citing *Keys v. Berryhill*, the Commissioner counters that ALJs are not precluded from relying on the opinions of agency consultants who did not have the chance to review all of the medical evidence in the hearing-level record. 679 F. App'x 477, 481 (7th Cir. 2017).   In *Keys*, the Seventh Circuit affirmed the Commissioner's denial of a disability claim despite the fact that the agency consultants' opinions on which the ALJ's decision was primarily based had not taken into consideration the claimant's subsequent medical treatment.   *Id.*   The court reasoned that the claimant had not provided any evidence that the subsequent treatment reports, including an MRI showing only a new "mild" and "minimal" spinal narrowing, would have changed the doctors' opinions.   *Id.*

Thereafter, the Seventh Circuit clarified in *Kemplen v. Saul* that "not all new evidence will necessitate a remand."   844 F. App'x 883, 887 (7th Cir. 2021), *as amended on reh'g in part* (June 21, 2021).   The decisive factor is "whether the new information changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of [the subsequent] report or whether the updated information was minor enough that the ALJ did not need to seek a second opinion."   *Id.* (internal citation and quotation marks omitted).

The Court finds *Keys* distinguishable.   Unlike the subsequent MRIs there that showed only "mild" and "minimal" spinal narrowing, the additional record here had the potentiality and could reasonably be expected to affect Dr. Vautrain's opined limitations.   The Commissioner argues that the CT scan that was conducted in August 2021 after Plaintiff's motor vehicle accident and shows a potential T4 fracture is not the kind of evidence that could call into question the ALJ's

13

reliance on an earlier medical opinion. The Commissioner relies on treatment notes stating that the fracture would heal on its own and recommending only "conservative treatment," as well as treatment notes from CPN Strohbeck, who, upon review of the August 2021 CT scan, opined, "routine healing" was visible and merely instructed Plaintiff to follow up with his orthopedic specialist and the physician's office in six weeks. Tr. 1096; Tr. 1119. However, the Seventh Circuit has repeatedly instructed that an ALJ should not "play[ ] doctor and interpret new and potentially decisive medical evidence without medical scrutiny." *Kemplen*, 844 F. App'x at 886 (alternation in original) (citations and quotation marks omitted). Further, as noted in the ALJ's decision, in addition to the August X-rays, which showed a T4 fracture, the record also contains a CT scan of the cervical spine that showed "large anterior osteophytes from the C3 to the C7 levels." Tr. 37. These appear to be new findings that were not reflected in Plaintiff's prior imaging history as summarized in the ALJ's decision. Tr. 31-33. Plaintiff's examination following the motor vehicle accident further showed cervical tenderness, cervical pain with movement, muscular tenderness, and decreased range of motion, decreased thoracic and lumbar range of motion, decreased right knee range of motion, and antalgic gait (while Plaintiff was otherwise observed to be in no acute distress, with no musculoskeletal deformity or sign of injury, no cervical spinous process tenderness, no lower extremity edema, no right knee swelling, deformity, or effusion, and normal coordination). Tr. 32. Based on that record, the Court cannot conclude that those findings could not reasonably be expected to alter Dr. Vautrain's opined limitations.

Turning to the pain treatment records, the Commissioner argues that they do not include the kind of "new" and "significant" medical diagnosis or change that reasonably could have altered Dr. Vautrain's findings. The Commissioner relies on the fact that the relevant record does not

14

contain a new diagnosis. The Court finds this argument unpersuasive. In rendering his opinion, Dr. Vautrain found that Plaintiff's subjective symptoms, including his back pain, were only partially consistent with total medical and non-medical evidence in the file, noting that the most informative factor in assessing their consistency was the "longitudinal treatment records." Tr. 101. Accordingly, the additional medical record showing Plaintiff visited Dr. Ali multiple times between 2018 and 2022 for injections and pain medication for his neck, back, and knee pain could reasonably be expected to potentially alter Dr. Vautrain's finding regarding the intensity, persistence, and functionally limiting effects of Plaintiff's back pain. Tr. 1769-2025.

Because the ALJ primarily relied on Dr. Vautrain's outdated opinion in assessing Plaintiff's RFC, remand is warranted.

**2. The ALJ's assessment of Dr. Ali's medical opinion.**

Plaintiff next challenges the ALJ's assessment of Dr. Ali's medical opinion as unpersuasive. An ALJ must consider the following factors when evaluating the medical opinion from a medical source: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are the supportability and consistency of the opinion. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Although the ALJ must consider all of these factors, she does not need to discuss each factor in her own opinion; the ALJ only needs to discuss the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(b),

15

416.920c(b). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion," while "consistency assesses how a medical opinion squares with other evidence in the record." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. §§ 404.1520c(b)(1), (2)). A minimal articulation of the ALJ's reasoning for assessing a medical opinion will suffice so long as the ALJ considers the regulatory factors and "builds a logical bridge from the evidence to his conclusion." *See Angie S. v. Kijakazi*, 21 C 5978, 2022 WL 17093363, at *6 (N.D. Ill. Nov. 21, 2022) (citation and internal quotation marks omitted).

Plaintiff first challenges the ALJ's supportability analysis of Dr. Ali's opinion. He claims that even assuming the reference to the treatment notes was sufficient for the ALJ to reject the opined limitation that Plaintiff could not stand even one hour total in an eight-hour work day, there is no indication as to why the ALJ rejected the remaining limitations. The Commissioner argues that the ALJ was not required to discuss supportability and consistency as to every opined limitation but only as to Dr. Ali's opinion as a whole and that Plaintiff did not cite any authority supporting such a requirement. The Court agrees with the Commissioner. Under C.F.R. § 416.920c(b)(1), when a medical source provides multiple medical opinions, the ALJ needs to articulate only how he "considered the medical opinions . . . from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 416.920c(b)(1). The ALJ is not "required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

Next, Plaintiff challenges the ALJ's finding that Dr. Ali's opined limitations were "not

16

consistent with the evidence as a whole, as is more specifically detailed in the analysis of Dr. Peterson's prior administrative medical findings above." Tr. 38. Plaintiff argued that it is unclear what those findings are. The Court finds this argument unpersuasive. In the immediately preceding paragraph, the ALJ discussed Dr. Peterson's opinion, referencing the ALJ's detailed analysis of the evidence as discussed in her assessment of Dr. Vautrain's opinion earlier in her decision. Because the ALJ's analysis of Dr. Vautrain's opinion contains a detailed analysis of the relevant record, the Court finds that the ALJ adequately supported her assessment of inconsistency by indirectly referring to her prior analysis.

For the reasons set forth hereinabove, remand is required. The Court stresses, however, that this Order should not be construed as an indication that the Court believes Plaintiff was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and consideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: September 18, 2024**

*s/  Reona J. Daly*
**Hon. Reona J. Daly
United States Magistrate Judge**

18